ADDISON GILBERT HOSPITAL & others[1] *vs*. RATE SETTING
COMMISSION & others.[2]

Suffolk. February 5, 1986. — March 10, 1986.

Present: LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Hospital,* Medicaid reimbursement. *Medicaid. Interest,*

In an action by certain hospitals participating in the Medicaid program against
the Commonwealth, the Rate Setting Commission and the Department of
Public Welfare, alleging damages on contract grounds and challenging the
legality of a flat rate, fixed by a regulation adopted by the commission, at
which the hospitals were to be reimbursed for care of patients awaiting
transfer to lower-level care facilities, the plaintiffs were entitled to the award
of prejudgment interest calculated pursuant to G. L. c. 231, § 6C, on the
principal sums due them after a judgment had been awarded allowing them
the difference between the amounts reimbursed and higher amounts deter-
mined to be due them, where the defendants knew of a Federal requirement
of prior approval of the rate regulation by the United States Secretary of
Health and Human Services when they made the flat rate effective, and yet
failed to obtain Federal approval. [58-60]

CIVIL ACTION commenced in the Superior Court Department
on March 12, 1981.

Following review reported in 390 Mass. 17 (1983), further
proceedings were had before *Eliot K. Cohen,* J., sitting under
statutory authority.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

---

[1] The plaintiffs are twenty-five nonprofit hospitals located in the Common-
wealth which provide care to Medicaid patients among others. See *Addison
Gilbert Hosp.* v. *Rate Setting Comm'n,* 390 Mass. 17 n.1 (1983) (*Addison
Gilbert I*).

[2] The defendants are the Commonwealth, the Rate Setting Commission
(commission), and the Department of Public Welfare (department), the
same parties as in *Addison Gilbert I.* See *id.* n.2.

*Jean C. Sullivan* for Department of Public Welfare.

*Mitchell H. Kaplan* for the plaintiffs.

NOLAN, J. This case represents phase two of an action which was commenced on March 12, 1981, and which resulted in our decision on August 23, 1983, in *Addison Gilbert Hosp.* v. *Rate Setting Comm'n*, 390 Mass. 17 (1983) (*Addison Gilbert I*). In the present case, we affirm the trial judge's entry of summary judgment for the plaintiffs which awarded the plaintiffs prejudgment interest on the principal sums due to them after the judgment which followed *Addison Gilbert I*. The defendants appealed, and we transferred the case to this court on our own motion. We affirm.

It is important to note what *Addison Gilbert I* decided. In that case, the plaintiffs challenged the validity of a regulation promulgated by the commission. The regulation (114.1 Code Mass. Regs. § 3.06 [1981]) fixed a flat reimbursement rate for health care providers, such as the plaintiffs, to Medicaid patients. The rate was applicable to those days which are called "administratively necessary days." *Addison Gilbert I* described "administratively necessary days" in the following language: "The regulation sets the rate at which hospitals are to be reimbursed for their patients who are on 'administratively necessary day' status. These patients are originally admitted to hospitals to receive care for their acute conditions, which could only be provided in the hospital setting. When their conditions change so that the medical services they require can be administered in a lower level facility, such as a nursing home, the patients are usually released from the hospital. However, frequently no nursing home beds are available for these patients, and the hospital is forced to keep them. The days during which the hospital continues to provide care for these patients are known as 'administratively necessary days.'"[3] *Id.* at 19 & n.5.

[3] The definition used in Massachusetts is "a day of acute inpatient hospitalization on which a lower than acute level of care is determined to be appropriate by the PSRO [Professional Standards Review Organization] but on which an appropriate placement is not available." 106 Code Mass. Regs. § 452.007 (B)(1)(1978).

After the issuance of several reimbursement rates for "administratively necessary days," in December, 1980, following a hearing before the commission, the department submitted a proposed amendment to the rate regulations to Federal authorities in the Department of Health and Human Services for approval. The department reserved its right to contest the Federal government's insistence on the need for approval. This new rate for "administratively necessary days" called for reimbursement at a flat rate of $70 a day for all hospitals. See 114.1 Code Mass. Regs. § 3.06. The rate was to be effective on February 1, 1981, despite the failure of the department to obtain Federal approval. See Addison *Gilbert I, supra* at 20.

The Federal legislation which created the Medicaid program requires a State to adopt a plan which complies with Federal law and which must be approved by the Secretary of Health and Human Services. 42 U.S.C. § 1396a(b) (1982). In particular, the Federal law required States to establish rates for "inpatient hospital services" and these rates require approval of the Secretary of Health and Human Services. *Addison Gilbert I, supra* at 19.

The narrow question decided in *Addison Gilbert I* was "whether the care provided by hospitals to patients on administratively necessary day status is considered to be 'inpatient hospital services' under 42 U.S.C. § 1396a(a) (13)(D) (1976)." *Id.* at 20. We answered that question in the affirmative. It followed that Federal approval was required and that failure to obtain the approval rendered the $70 flat rate invalid. *Id.* at 20-21.

Following our rescript in *Addison Gilbert I,* a judgment was entered for the plaintiffs on November 1, 1983, for the difference between the rate at which the plaintiffs were previously reimbursed for "administratively necessary days" and the correct rate, but this judgment left open the issue presented on this appeal, i.e., whether the plaintiffs are entitled to prejudgment interest from November 1, 1981, to January 10, 1984 (a time period stipulated by the parties as applicable, if any prejudgment interest is due).

All parties seem to concede that if interest is due, the computation is governed by G. L. c. 231, § 6C,[4] which is set forth in full in the margin, and which is invoked in cases based on contractual obligations. They agree that the thrust of the underlying obligations of the defendants to the plaintiffs is in contract. See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 359 Mass. 206, 209 (1971). They disagree as to the existence of a breach. They do not contest the principle that the Commonwealth may be liable for breach of contract and for interest to the same extent as a private person. See G. L. c. 258, § 12.

The defendants argue that they did not cause a breach of contract, that they acted in good faith and that they honestly misinterpreted Federal law as to the requirement of approval of the rate. They argue that under the test of *Perkins School for the Blind* v. *Rate Setting Comm'n,* 383 Mass. 825, 831 (1981), they should be exonerated from the payment of interest because they have "done all that the law required . . . in the particular case." We disagree.

Language from *Massachusetts Gen. Hosp.* appearing in *Perkins* immediately before this quoted language provides that "interest may be allowed against the Commonwealth for any 'detention of money, beyond the reasonable time which the statutes requiring payment to [plaintiffs] fairly should be interpreted as contemplating.' " *Perkins, supra* at 831, quoting *Massachusetts Gen. Hosp., supra* at 209.

Despite the defendants' arguments to the contrary, the present case is distinguishable from one in which a provider successfully appeals the *amount* of the rate under the procedure established in G. L. c. 6A, § 32. In this instance, the language of

---

[4] General Laws c. 231, § 6C (1984 ed.), is as follows: "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum, from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action."

*Perkins* ("a liability for interest in the Commonwealth does not arise each time an initial rate is subsequently adjusted upward," *id.* at 832) is not applicable to the present case since the original appeal in *Addison Gilbert I* was a frontal attack on the *legality* of the rate. Applying the principles of *Perkins* and *Massachusetts Gen. Hosp.* to the instant case, it is clear that the defendants did not do all that the law required because they failed to obtain Federal approval. They knew of the Federal requirement of prior approval when they made the $70 rate effective. The Federal agency informed the defendants that such action would violate Federal law. By statute, G. L. c. 6A, § 32, provides that these rates must conform with the requirements of Federal law.

In a word, the defendants' conduct constituted a breach of contract for which they must be responsible for the payment of interest.

*Judgment affirmed.*