**WORLD CARRIERS, INCORPORATED,**
a corporation, Appellant,

v.

**Louis L. BRIGHT, Appellee.**

**Lemel SILAS, Appellant,**

v.

**PAROH STEAMSHIP CORPORATION,**
Appellee.

**Nos. 7996, 7997.**

United States Court of Appeals
Fourth Circuit.

Argued on Rehearing March 18, 1960.

Decided April 18, 1960.

Harry E. McCoy, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on the brief) for World Carriers, Inc., and Paroh S.S. Corp.

Sidney H. Kelsey, Norfolk, Va., for Bright and Silas.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

In each of these cases, brought under the Jones Act against foreign corporations alleged to be doing business in Virginia but not domesticated there, substituted service of process was attempted by service upon Virginia's Secretary of the Commonwealth upon the assumption that § 13–217[1] was controlling. The cases were tried and disposed of below upon the same assumption.

For the first time, it has now been made to appear that, prior to the commencement of either action, § 13–217 had been repealed insofar as it applied to an undomesticated, uncertificated foreign corporation doing business in Virginia. As to such a corporation, under § 13.1–119,[2] which applies on and after January 1, 1957, the unauthorized transaction of business in Virginia, without the appointment of an agent for the service of process, results in the constructive appointment of the Clerk of the State Corporation Commission as its statutory agent.

Prior to 1956, there had been no general revision of Virginia's laws relating to corporations since 1903. It was recognized in 1954 that these laws were antiquated and inadequate. By an Act of April 8, 1954,[3] the Virginia Code Commission was directed to recommend a general revision of the corporation laws. With the assistance of special counsel, the Commission prepared a voluminous report which it transmitted to the Governor and the General Assembly on September 30, 1955.[4]

The report of the Code Commission contains a comprehensive proposal of a new corporation act, generally following, in its most essential features, the Model Business Corporation Act of the American Bar Association, which was to replace entirely old Title 13 of the 1950 Code.[5]

The proposed laws relating to business corporations, with some changes, were adopted and enacted into law as a new Title 13.1 to replace old Title 13, in its entirety.[6] Technical and conforming amendments to sections codified under other titles were also adopted.[7] The repeal of old Title 13 was to become effective, generally, on January 1, 1957.

Virginia had created a State Corporation Commission and charged it with the duty of regulating business corporations. The Code Commission recommended that the Corporation Commission, rather than the Secretary of the Commonwealth, was better equipped to handle service of process upon business corporations.[8] One of the changes effected by Title 13.1, therefore, was the general substitution of the Clerk of the Corporation Commission for the Secretary of the Commonwealth as the statutory agent for service of process upon corporations.

When service of process was attempted in these cases in June 1957, therefore, it was the Clerk of the Corporation Commission, not the Secretary of the Commonwealth, who was the statutory agent.

The effective date of the repeal of old § 13–217 was not January 1, 1957, for all purposes. New § 13.1–128 provided that § 13–217 should remain effective until July 1, 1958 to the extent it applied to the service of process upon previously

1. Code of Virginia 1950.

2. Code of Virginia 1950, as amended by Acts of 1956, ch. 428.

3. Acts of 1954, ch. 706, p. 934.

4. The report, with the letters of transmittal and of recommendation, was printed as House Document No. 5 of the 1956 Session of the General Assembly of Virginia.

5. There were also proposed amendments of the laws relating to public utilities and co-operatives. (Title 56).

6. Act of March 30, 1956, Acts of 1956, ch. 428, pages 487–602.

7. E.g. Act of March 30, 1956, Acts of 1956, ch. 432, pages 607–609.

8. See comment following § 13.1–111, House Document No. 5, 1956 Session, General Assembly of Virginia.

certified, fully qualified foreign corporations. We find nothing in that section, however, which continues the effectiveness of § 13–217 beyond January 1, 1957 when the corporation to be served had not actually appointed the Secretary of the Commonwealth as its process agent.

The Act required, in effect, that all qualified foreign corporations requalify by filing specified documents with the Clerk of the Corporation Commission. Among the required filings was an appointment of the Clerk as process agent. Each such corporation was given eighteen months, or until July 1, 1958, within which to accomplish its requalification.

In recognition of the fact that confusion would exist during an interval in which the identity of the statutory agent and a previously appointed officer was not the same, special provision was made for the situation by § 13.1–128. That section makes it clear that service upon the Clerk of the Corporation Commission is effective whether or not the foreign corporation had requalified by appointing him its process agent. If it had not, the Clerk was required, during the eighteen months period, to transmit the process to the Secretary of the Commonwealth, the actually appointed process agent. Affirmative appointment of the Clerk of the Corporation Commission as process agent would revoke a previous appointment of the Secretary, but the revocation would be effective only on July 1, 1958. If during the eighteen months period, there were effective appointments of both officials, service upon the Secretary would be good, but he was required to transmit the process to the Clerk rather than to the corporation. If a foreign corporation, during the eighteen months period failed to appoint the Clerk its process agent, its qualification and certification were revoked, but its previous appointment of the Secretary as process agent was to be given continuing effect

with respect to causes of action arising prior to July 1, 1958.

It was with one aspect of these situations that the General Assembly was concerned when, in a paragraph of § 13.1–128 dealing specifically with them, it was provided:

"* * * Notwithstanding anything elsewhere herein contained, the provisions of § 13–216 and § 13–217 shall remain effective until July 1, 1958, and thereafter as to causes of action arising prior to July 1, 1958, as to each foreign corporation whose certificate of authority is revoked by the provisions hereof because of failure to establish a registered office and appoint a registered agent."

Read in context, it seems clear that the phrase describing foreign corporations whose certificates of authority are revoked by a failure to requalify is a modification of the continued effectiveness of § 13–217. The entire section deals with problems arising out of the impact of the new act upon previously qualified corporations. No reference is made anywhere in the section to a corporation doing business in the state on and before January 1, 1957 which had not qualified under the former act, or to a corporation which commenced doing business in Virginia after January 1, 1957. With respect to those corporations, the problems of duplicating and conflicting appointments did not exist.[9] No reason appears to have been recognized for not making the provisions of the new act, as to them, immediately and exclusively effective.

■ We read § 13.1–128 to postpone the effective date of the repeal of § 13–217 only as the latter section has application to corporations which had qualified under the former acts of which the section was a part.

9. In its report, the Code Commission commented that the purpose of § 13.1–128 was to provide for the transition from former law to the new and to make plain the Act's application "to all corporations incorporated in Virginia or now qualified to do business in Virginia."

■ We do not think the delayed effectiveness of a collateral amendment of § 8–60 requires a different conclusion.

Title 8, relating to civil remedies and procedure, contained a section, § 60, providing that service upon a corporation might be effected by service upon the Secretary of the Commonwealth if that official "shall have been appointed or constituted the agent of the corporation for service of process under * * * § 13–217." It further provided that such service upon the Secretary "shall constitute sufficient foundation for a personal judgment against such corporation when the other requisites therefor exist. * * *"

Among the conforming amendments effected by chapter 432 of the Acts of 1956 was one of § 8–60. The new § 8–60 is a rearrangement of the old. It provides for service of a foreign corporation by service upon the Clerk of the Corporation Commission, which may be the basis of a personal judgment. The amendment was to be effective, however, only on July 1, 1958.

Subsequently the Code Commission incorporated both sections in the code, each being numbered "8–60." In the Code, the old section carries the title, "How process served on foreign corporation prior to July 1, 1958," while the new section had as its title, "How Process Served on Foreign Corporation On and After July 1, 1958."

From these circumstances, the plaintiffs argue that the General Assembly intended the Secretary of the Commonwealth to be the process agent for unqualified foreign corporations until July 1, 1958. Consistently, since the new § 8–60 was not to become effective until July 1, 1958, they would have to argue that the Clerk of the Corporation Commission was not the process agent of such corporations until July 1, 1958.

Such deductions from the postponement of the effective date of the amendment of § 8–60, however, are in conflict with express provisions, and the manifest purpose of Title 13.1. There it is made clear that the authority of the Clerk to act as process agent dates from January 1, 1957, not July 1, 1958, and that the appointment of that official, not the Secretary of the Commonwealth, as process agent is deemed to result from the unauthorized conduct of business in Virginia after January 1, 1957. By § 13.1–128, as we have seen, the authority of the Secretary to act was continued for the limited period only to the extent that he acted under written appointments, filed with him. His constructive appointment as process agent for unauthorized corporations doing business in Virginia after January 1, 1957 was terminated.

In this situation, it was appropriate that old § 8–60 be continued in some form during the period of transition. Since, by its terms, it applies only if the Secretary of the Commonwealth is the process agent by virtue of § 13–217, the partial repeal of the latter section, which became effective on January 1, 1957, necessarily limits the subsequent application of old § 8–60.

The fact that new § 8–60 was not to be effective, for any purpose, until July 1, 1958 is puzzling, since it is plain that Title 13.1 permits service of a foreign corporation by service upon the Clerk at all times after January 1, 1957. Perhaps attention was focused upon qualified corporations, though as to them the Clerk, after January 1, 1957, was an authorized, in some situations the preferred, process agent. From the plain authorization and direction of the Clerk to act during the period of transition, we find no difficulty in drawing the inference that such service could be the basis of a personal judgment, though new § 8–60 was in suspense.

■ Under the governing statute, therefore, substituted service could be had in these cases only upon the Clerk of the State Corporation Commission. The attempted service upon another state official was ineffective to give the court personal jurisdiction of the defendants. Without such jurisdiction, the default judgments heretofore entered were nugatory.

The service was not questioned in the District Court. The only questions there raised were whether Virginia's statutes permitted the maintenance, on substituted service, of transitory tort actions when the alleged torts were committed outside of Virginia, and whether a seaman's cause of action under the Jones Act, 46 U.S.C.A. § 688 may be said to have arisen out of business done by his employer in Virginia solely by reason of the fact that he signed on the ship in one of Virginia's ports. Since we find the attempted service of process ineffective, we do not reach these questions.

The judgments will be vacated and the cases remanded.

Vacated and remanded.