PacifiCORP CAPITAL, INC., Plaintiff,

v.

HANSEN PROPERTIES, Defendant.

No. 92 Civ. 9390.

United States District Court,
S.D. New York.

June 6, 1995.

Michael E. Geltner, Washington, DC and Dasil Velez, Carro, Batista and Velez, New York City, for plaintiff.

Cynthia M. Certo, Albert Bartolomeo & Associates, Philadelphia, PA, for defendant Hansen Properties, Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This motion is the product of plaintiff's failure to ensure that the defendant was properly named in the summons· and complaint and raises the question whether such a defect may be corrected long after the case has gone to judgment. In the circumstances of this case, the Court concludes that it may.

Plaintiff PacifiCorp Capital, Inc. ("PCI") obtained a default judgment against defendant Hansen Properties which was entered on the docket on March 11, 1993. The judgment was the culmination of an action on a 1988 equipment lease between plaintiff's predecessor in interest and "Hansen Properties."

Upon seeking to enforce the judgment against assets held for the account of Hansen Properties, Inc., a Pennsylvania corporation ("HPI"), plaintiff was met with the assertion that HPI was organized in 1992 and that Hansen Properties was a sole proprietorship or partnership consisting of Bud and Arlene (or Eileen) Hansen. Plaintiff thereupon filed this motion for an order declaring the judgment final and enforceable against HPI. We treat the motion as one pursuant to FED. R.CIV.P. 60(a) to correct the judgment to reflect that the defendant against which it was rendered is HPI. Also before the Court is an application by HPI, made by letter after PCI's motion was fully submitted, for an extension of time to respond to PCI's motion.

### Facts

PCI's predecessor entered into the equipment lease that gave rise to this action on July 15, 1988. The lease contained a certificate of incumbency pursuant to which one David S. Sherman certified that he was senior vice president and that Christopher L. Rosati, who signed the lease on behalf of the lessee, was vice president and corporate controller of Hansen Properties. PCI thus assumed from the outset that it was dealing with a corporation.

The lease expired in July 1990, and the parties subsequently discussed extension of the term. PCI's sales representative spoke in that connection with one Joe Caprara, whom he believed to be a senior vice president. When those discussions proved fruitless, PCI sent a notice of default to Mr. Caprara at "Hansen Properties." Ultimately, it instituted this action on December 29, 1992.

Process was served on Hansen Properties on February 11, 1993 by delivery of copies of the summons and complaint to Mr. Joe Caprara in Blue Bell, Pennsylvania, but no answer or motion was forthcoming. PCI then applied for a default judgment, mailing a copy of the papers to Hansen Properties in Blue Bell, Pennsylvania. Judge Freeh granted the motion and the judgment was docketed as indicated above.

On April 16, 1993, Adam Kravitz, an attorney representing Hansen Properties, telephoned plaintiff's counsel. He stated that he had the summons and complaint that had been served on Hansen but was unsure of when he had to answer or whether he needed an extension of time. Plaintiff's counsel three days later informed Mr. Kravitz that a default judgment had been entered. At that point, Kravitz told PCI's counsel that Hansen Properties was not a corporation but a fictitious name used by individuals doing business.

In early May 1993, PCI garnisheed funds in an account in the name of HPI in Florida. Mr. Kravitz thereupon telephoned plaintiff's counsel to protest the attachment, claiming that HPI had been incorporated in December 1992 and that "Hansen Properties" was a sole proprietorship or partnership. Shortly thereafter, Joe Caprara and Mr. Kravitz again telephoned PCI's counsel to discuss settlement, noting also that "Hansen" planned to move to set aside the default judgment. A few days later, PCI entered into a letter agreement with HPI, signed for HPI by Mr. Caprara as senior vice president, pursuant to which PCI withdrew the garnishment, HPI covenanted not to sue with respect to the garnishment, and HPI agreed to negotiate in good faith with a view to settlement and to disclose documents evidencing the alleged separate corporate existence of HPI from Hansen Properties.

The parties did not settle the matter. HPI never moved to set aside the default judgment. PCI served this motion, which specifically stated that it was returnable in Part I on May 9, 1995, on April 28, 1995 by mail on both Mr. Kravitz and HPI, the latter to the attention of Joe Caprara. The papers served on Mr. Kravitz were mailed to him at Albert Bartolomeo & Associates, 2043 Locust Street, Philadelphia, Pennsylvania 19103. HPI filed no papers in opposition to the motion and did not appear at the return of the motion.

On May 10, 1995, PCI's counsel faxed a letter to the Court at 1:13 p.m., responding to an issue raised during oral argument on May 9, 1995 and, quite properly, sent a copy addressed to Mr. Kravitz at the Albert Bartolomeo firm. Approximately two hours later, the Albert Bartolomeo firm faxed a letter to the Court acknowledging receipt of PCI's letter and requesting an extension of time in which to respond to PCI's motion. The letter, which is on letterhead indicating the firm's address as that to which the motion was mailed, claims that HPI and Hansen Properties both exist, have different owners, and are in different lines of business. It does not, however, deny that the Albert Bartolomeo firm and HPI received PCI's motion or offer any excuse for the failure to file papers in opposition or to appear on the return date. Nor does it deny that process in this action was duly served on Joe Caprara in February 1993.[1]

### Discussion

■ Even if the Court assumes the truth of Mr. Kravitz's claim to plaintiff's counsel that HPI was incorporated in December 1992, it existed at the time process was served in February 1993 and quite likely existed when the action was filed on December 29, 1992. Inasmuch as process was served on Joe Caprara, who previously had been the addressee of the notice of default and later entered into settlement discussions and a letter agreement with plaintiff as senior vice president of HPI, there is no doubt that the defendant in the action below was HPI, although the name in the caption was "Hansen Properties." While the facts related by Mr. Kravitz to plaintiff's counsel, as well as those set forth in Albert Bartolomeo's May 10, 1995 letter to the Court, if true, might have raised a defense to this action, HPI's default admitted the well pleaded factual allegations of the complaint including the allegation that the defendant, i.e., the party served, was the lessee.[2] In consequence, the judgment below was rendered, and intended to be rendered, against HPI. The question remains whether the judgment now may be corrected to reflect the correct name of the defendant which actually was served.

FED.R.CIV.P. 60(a) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time . . ." By this time, it is plain that misnomers with respect to parties may be corrected pursuant to this Rule. *Fluoro Electric Corp. v. Branford Associates,* 489 F.2d 320 (2d Cir.1973); *Silas v. Paroh S.S. Co.,* 175 F.Supp. 35, 38–39 (E.D.Va. 1958), *vacated on other grounds,* 276 F.2d 857 (4th Cir.1960).

*Fluoro Electric* is closely in point. The plaintiff there commenced its action against "Branford Associates, a corporation." The answer was filed on behalf of "Branford Developers, Inc. (sued herein as Branford Associates)." Judgment was entered in due course against "Branford Associates, a corporation." The marshal then levied execution on a New York bank that held accounts in the names of Branford Associates and Branford Developers, Inc. The bank refused to transmit the sums held in the name of "Branford Associates," evidently because the depositor was not a corporation. The district court, after a hearing, concluded that Branford Associates, which was a partnership, was the entity that plaintiff sued and intended to sue, granted plaintiff's motion to substitute "Branford Associates" for "Branford Associates, a corporation," and directed the

---

1. I note also that one Alfonso Caprara is listed on the letterhead of the Albert Bartolomeo firm.

2. Even if HPI was incorporated in December 1992, it may well have been the successor in interest to "Hansen Properties," whatever that was, and thus be liable on the lease.

marshal to levy execution accordingly. The Second Circuit affirmed.

The Court recognizes that there are some factual differences between *Fluoro Electric* and this case. Nevertheless, the basic thrust of the decision is clear. If a plaintiff sues and intends to sue a particular person or entity, Rule 60 is an appropriate vehicle through which to correct an inadvertent error in the name of the defendant.

Here, HPI had every opportunity to assert the position evidently taken in conversation by Mr. Kravitz and in the belated May 10, 1995 letter, viz. that it is not the entity with which PCI's predecessor contracted. But it has defaulted at every step of the way. Although admittedly served with process, it declined to answer or move. Although informed of the default judgment against it, it failed to follow through on its stated intention to move to set aside the default. Although served with this motion, it did not even object to plaintiff's present application to make clear that the judgment is enforceable against HPI. HPI no longer is entitled to the benefit of whatever doubts may exist as to whether HPI was the proper subject of this suit.

Accordingly, the name of the defendant in the judgment and in all prior papers filed in this action is corrected to substitute "Hansen Properties, Inc." for "Hansen Properties." The Clerk shall make such entries as may be appropriate to carry out this order.

The application of the Albert Bartolomeo firm, on behalf of HPI, for an extension of time in which to respond to PCI's motion is denied. FED.R.CIV.P. 6(b)(2) provides in relevant part that "the court for cause shown may at any time in its discretion" extend the time for the doing of an act "upon motion made after the expiration of the specified period ... where the failure to act was the result of excusable neglect ..." While the Court treats the letter as a motion for such an extension, HPI has not demonstrated that the failure to file any response it may have had to PCI's motion prior to, or to appear on, the return date was the product of excusable neglect. *Davidson v. Keenan,* 740 F.2d 129, 131–32 (2d Cir.1984); 4A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1165, at 476–82 (1987). Moreover, while the Court does not rely on it in disposing of HPI's application, it is left with the clear impression that HPI and its counsel have played fast and loose with PCI and with the Court. HPI has been on notice of this litigation and of every significant step in it from the very outset. It obviously made a deliberate decision to ignore it when it could and stall it when it was past ignoring. If indeed HPI and Hansen Properties are so plainly unrelated that plaintiff unmistakably served the wrong party, it is impossible to understand why Messrs. Kravitz and Caprara entered into settlement discussions with PCI and, indeed, why HPI signed an agreement with PCI agreeing to negotiate in good faith with a view toward settlement. Even if HPI had advanced facts in support of the application for an extension that might conceivably amount to excusable neglect within the meaning of Rule 6(b)(2), the motion would be denied in the exercise of discretion.

SO ORDERED.

